NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PROVIA W. DIGGS,<br><br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 12-CV-07253 (RMB)<br><br>**OPINION** |

Appearances

Adrienne Freya Jarvis
800 North Kings Highway, Ste. 304
Cherry Hill, NJ 08034
    Attorney for Plaintiff

Robert Randolph Schriver
Kristina Danielle Cohn
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Provia W. Diggs (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court AFFIRMS the decision of the administrative law judge ("ALJ").

1

## I. Standard of Review

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

2

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); see also Guerrero v. Comm'r of Soc. Sec., No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

### **"Disability" Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in

4

20 C.F.R. § 404.1520(a)(4)(i-v). In <u>Plummer</u>, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis, although only step one is at issue here:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

II. **Background**

   a. **Procedural Background**

Plaintiff was 34 years old on her alleged disability onset date of January 1, 2005. (R. 102.) Plaintiff claims that because of mental illness, post-traumatic stress, and migraines, she has been unable to work since January 1, 2005. (R. 119.) On September 3, 2009, Plaintiff applied for DIB and Supplemental Security Income ("SSI").[1] (R. 18, 102-03, 104-06.) Plaintiff's SSI claim was approved with a disability onset date of September 3, 2009, and she is currently receiving SSI benefits. (<u>See</u> Pl.'s Br., Dkt. Ent. 12, at 1 & Ex. A; R. 113.) However, Plaintiff's DIB claim was denied initially on March 29, 2010 and upon reconsideration on May 24, 2010. (R. 18, 48-60, 64-65.)

---

[1] Generally, in order to be eligible for DIB, a claimant must have worked for at least 20 of the 40 quarters preceding her alleged disability onset date. <u>See</u> 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130. As the ALJ noted, and Plaintiff does not dispute, "[t]he claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2005 (hereinafter 'the date last insured')." (R. 20; <u>see</u> <u>also</u> <u>id.</u> at 111.)

5

On March 21, 2011, the ALJ held a hearing at which Plaintiff and her expert, Dr. Richard Cohen, testified. (R. 29-51.) On June 13, 2011, the ALJ issued a decision finding that Plaintiff engaged in substantial gainful activity ("SGA") from January 1, 2005 through December 31, 2005, her date last insured, and therefore was not disabled within the meaning of the Social Security Act ("SSA"). (R. 20-21.) Plaintiff filed a Request for Review with the Appeals Council, which was denied on September 25, 2012 (R. 1-5, 14), and thus the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. § 404.981. This appeal ensued.

### b. Plaintiff's Testimony

Plaintiff testified that in January 2005, she was unable to work because "I was in and out of the hospital, and it seemed like I couldn't keep a balance between trying to have a marriage, a household, and bills, and trying to keep my mental health in a balance . . . ." (R. 36.) She also testified that she was using approximately $800 worth of drugs per week at the time (id. at 34), and that she "was dancing . . . in the entertainment industry . . . [as] a means to support [her] habit." (Id. at 37.) Plaintiff explained that she "would just mainly walk around the club, sit down, talk to people" and that her shifts lasted from two to four hours, although the precise duration was up to her. (Id. at 40-41.) In addition, Plaintiff

6

engaged in "other little things" that were "embarrassing," such as "entertaining as a friend" or other activities involving friends with benefits. (Id. at 38-40.) Plaintiff does not dispute that these activities involved prostitution. (Id. at 194 n.1.) Some of the individuals who Plaintiff entertained would provide her with drugs in exchange. (Id. at 38, 40.) But, she testified that this "wasn't work." (Id. at 40.)

When asked how much she thought she was earning in a typical month, Plaintiff guessed that she earned around $3,200-4,000 per month "off the books." (Id. at 37-38.)[2] However, she also "wasn't consistently working" and "would not show up for work for weeks at a time." (Id. at 38.) She further testified that she did not earn an annual income of $40,000 because she "was also able to get [drugs] from people without having to work" through her other engagements. (Id. at 38-39.)

### c. The ALJ's Decision

The ALJ determined at Step 1 that Plaintiff engaged in SGA from January 1, 2005, the alleged onset date of disability,

---

[2] In particular, Plaintiff testified as follows:

> Q. So [how] much do you think you were earning in a typical month, overall, about? Assuming that eight times four is $3,200, roughly.
>
> A. I guess so. Something like that.
>
> Q. $3,200, $4,000 maybe. I'm just –
>
> A. Around that, maybe, --.

(R. 37.)

7

through December 31, 2005, her date last insured, and therefore was not disabled within the meaning of the SSA. (R. 20-21.) He relied primarily on Plaintiff's testimony that in 2005, she used approximately $800 worth of drugs per week. (Id. at 20.) Plaintiff admitted that she was dancing at clubs and engaging in "embarrassing" activities with "friends with benefits" to earn the necessary funds to support her habit. (Id.) The ALJ cited the definition of SGA set forth in SSR 82-53, and noted that both dancer and escort are occupations listed in the Dictionary of Occupational Titles ("DOT") and therefore constitute the type of work normally done for pay or profit. (Id. at 20-21.) He also addressed Plaintiff's contention that she did not engage in this work on a full-time basis but did so only sporadically, finding that such assertions were undermined by the fact that part-time work may be considered SGA and that she admitted she earned up to $4,000 per month. (Id. at 21.)

### III. Analysis

At issue in this case is whether there is substantial evidence supporting the ALJ's finding that Plaintiff engaged in SGA from January 1, 2005 through December 31, 2005. At Step One, if it is determined that the claimant is engaging in SGA, then the disability claim will be denied. 20 C.F.R. § 404.1520. Work activity is substantial if it "involves [] significant physical or mental activities," even where it is part-time work or a

8

plaintiff does less, is paid less, or has less responsibility than with prior work. Id. §§ 404.1572(a), 416.972(a). Work activity is gainful if it is the type that is usually done for pay or profit, regardless of whether or not a profit is realized. Id. §§ 404.1572(b), 416.972(b). A person's illegal activities, such as Plaintiff's prostitution-related activities, can constitute SGA. See SSR 94-1c; see also Dotson v. Shalala, 1 F.3d 571 (7th Cir. 1993) (thievery); Corrao v. Shalala, 20 F.3d 943, 948 (9th Cir. 1994) (drug dealing).

A person earning more than a designated monthly amount that is calculated based upon the national average wage index is presumed to be engaging in SGA. See id. § 404.1574(b)(2). In 2005, the SGA earnings level was $830 per month.[3] Earnings at or above this level create a rebuttable presumption of SGA. See 20 C.F.R. § 404.974(b)(2). "In considering whether the presumption is rebutted, the factors to be considered include the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, special working conditions, and for individuals who are self-employed, the value of their work to the business." Corrao v. Shalala, 20 F.3d 943, 948 (9th Cir. 1994) (citing 20 C.F.R. §§ 416.973-416.976).

---

[3] Substantial Gainful Activity, SSA, http://www.ssa.gov/OACT/cola/sga.html (last accessed Feb. 11, 2014).

9

In evaluating whether the claimant engaged in SGA, the starting point is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1) ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity."). Earnings are generally averaged over the period of time in which the work was performed. See SSR 83-35, 1983 WL 31257 (1983). Here, Plaintiff testified to an average monthly income of $3,200 or $4,000[4] (R. 37), more than three times the Guidelines amount and thus sufficient to find Plaintiff presumptively engaged in SGA.

The ALJ further determined that because "dancer" and "escort" are defined in the DOT, Plaintiff engaged in gainful activity, i.e. work that is normally done for pay or profit. (R. 20-21); 20 C.F.R. §§ 404.1572(b), 416.972(b). Plaintiff argues that this finding was in error because Plaintiff's work activities do not match the activities described in the DOT. (See Dkt. Ent. 8.) The Court rejects this argument. At the very least, Plaintiff testified that she would "walk around the club, sit down, talk to people," looking for a person with the right amount of money. (R. 40-41.) As to her illegal prostitution

---

[4] Plaintiff's testimony that she did not make an annual income of $40,000 is not inconsistent with an average monthly income on the low end of this range, especially in light of her testimony that she engaged in other activities for which she was paid in drugs. (See R. 38.)

activities,[5] she testified that she entertained people. (Id. at 39-40.) These activities are consistent with the activities of an escort as defined by the DOT. See DOT 359.367-010 ("Acts as social partner for person of opposite sex to enable individual to attend functions, participate in activities requiring a partner, or provide companionship . . . while visiting public establishments . . . .").[6] Furthermore, Plaintiff testified that she danced (R. 37, 40),[7] so the Court is at a loss as to how her activities would not meet those of a "dancer" as defined by DOT 151.047-010. Thus, the ALJ's finding of gainful employment is supported by substantial evidence in the record.

Plaintiff next challenges the ALJ's conclusion that Plaintiff's work activities were substantial. Plaintiff's argument comes down to her assertion that she received drugs "from people without having to work" (R. 38; see also Pl.'s Br. at 15), and thus the ALJ's failure to ascertain what proportion of the drugs Plaintiff purchased or otherwise obtained through work activity versus what proportion she received for free, renders the ALJ's conclusion unsupportable. The context of

---

[5] Plaintiff's testimony suggests that she engaged in prostitution activities, which Plaintiff does not dispute. (R. 194 n.1.)

[6] DOT (4th ed. 1991), available at https://www.oalj.dol.gov/LIBDOT.HTM (last visited Feb. 18, 2014).

[7] See also id. at 456 (reporting on Dec. 20, 2005 that she worked as an exotic dancer); id. at 235, 240 (reporting in January 2006 that she has "been stripping for the past 5 years").

11

Plaintiff's testimony demonstrates, however, that Plaintiff received those drugs in exchange for "entertaining" certain individuals. In other words, the drugs were not akin to a gift given for free to a friend but rather were provided to Plaintiff as payment for her services. (R. 39-40 ("I had other little things going on that I – that weren't work related. I – it's really embarrassing that I have to [go] into it. . . . Yeah, I was getting it – . . . – basically given to me, because I would get a couple – maybe I'd go to a club, maybe dance for one day or something, or a couple hours, meet these people and then just – I'd be entertaining as a friend, and in that type of thing friends were [sic] benefits.").) Furthermore, to the extent that Plaintiff testified that she did not work as a dancer consistently and would not show up for work for weeks at a time (id. at 38), the ALJ rejected this testimony as inconsistent with the record and specifically Plaintiff's testimony that she earned approximately $3,200 to $4,000 per month. (See id. at 21); Ogden, 677 F. Supp. at 278 (the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence"). In addition, Plaintiff reported in January 2006 that she had been stripping for the past 5 years, had been employed 30 of the prior 36 months, and had been unemployed for the past 2 months. (Id. at 240.) This evidence further supports the ALJ's conclusion that Plaintiff

12

engaged in regular work activity. In any event, as the ALJ acknowledged, even part-time work may constitute SGA. (Id. at 21); see also 20 C.F.R. §§ 404.1572(a), 416.972(a); id. § 404.1573(e) ("Time spent in work. While the time you spend in work is important, we will not decide whether or not you are doing substantial gainful activity only on that basis. We will still evaluate the work to decide whether it is substantial and gainful regardless of whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood.").

    Moreover, contrary to Plaintiff's contention, both her legal and illegal work activity required significant mental and physical exertion. For example, Plaintiff's activities necessitated, at the very least, searching for an individual with the right amount of money or with access to drugs (see R. 41-42), and, once she identified that person or persons, she entertained him/her (id. at 37). See Dotson, 1 F.3d at 577-78 (finding substantial evidence of SGA where plaintiff testified to planning and executing thefts and subsequent resale, and lifting and carrying stolen items); cf. Corrao, 20 F.3d at 948-49 (finding drug dealing activities not SGA where plaintiff did not plan the purchase but was passively contacted by two or three people who requested he purchase drugs for them, and plaintiff spent less than one hour a day purchasing drugs, the

majority of which was spent as a passenger in a car). Thus, the Court finds the ALJ's conclusion that Plaintiff engaged in SGA regularly throughout the relevant period is supported by substantial evidence and therefore affirms the ALJ's decision.

                                                                s/Renée Marie Bumb
                                                                 RENÉE MARIE BUMB
                                                                 United States District Judge

Date: February 20, 2014